**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| CHRISTOPHER BLACKFORD, ) | CASE NO.   5:16-cv-00691 |
| ) | |
| Petitioner, ) | JUDGE JEFFREY J. HELMICK |
| ) | |
| v. ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| ) | |
| ALAN J. LAZAROFF, Warden, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Respondent. ) | |

Petitioner, Christopher Blackford (hereinafter "Petitioner" or "Blackford"), challenges the constitutionality of his conviction in the case of *State v. Blackford*, Stark County Court of Common Pleas Case No. 2013-CR-1833.   Petitioner, *pro se*, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on March 18, 2016. (R. 1). On August 19, 2016, Warden Alan J. Lazaroff ("Respondent") filed his Answer/Return of Writ. (R. 8). Petitioner filed a traverse on September 23, 2016. (R. 10). This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that the habeas petition be DENIED.

**I. Summary of Facts**

Factual determinations made by state courts are presumed correct in a habeas corpus

proceeding instituted by a person in custody pursuant to the judgment of a state court. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence.") The Fifth District Court of Appeals (hereinafter "state appellate court") summarized the facts underlying Blackford's conviction as follows:

> {¶ 4} On November 19, 2013, Canton Police Officer David Grant responded to an apartment at 802 12th St. N.W. shortly after 1:00 a.m. The apartment was on the bottom level of a multi-unit apartment building. When he arrived on the scene, Officer Grant observed that a window directly next to the apartment's steel door was broken. The window was approximately three feet up. The Officer and other officers on the scene heard commotion inside the apartment and went inside. Officer Grant testified that the apartment "was in disarray' and that appellant was sitting on the bed. Transcript, Volume I at 127. Appellant was bleeding from his face and was "[e]xtremely loud", cursing and belligerent. Transcript, Volume I at 128–129.
>
> {¶ 5} Officer Grant testified that appellant was handcuffed and put into the back of a police cruiser for safety purposes. After other officers on the scene left, Officer Grant and Officer Moore spoke with Fredrica Gomez who told them that appellant was her live-in boyfriend and that he had come over because he was jealous that she was spending time with another male in the apartment. She indicated that appellant had struck her in the head and had attacked the homeowner. When Officer Grant asked Gomez how appellant sustained the cut on his face, she told him that appellant had broken the window out and had come through the window, cutting his forehead. Gomez signed a witness statement. According to the Officer, the majority of glass was inside the apartment and there was blood around the area of the floor containing the glass.
>
> {¶ 6} Melvin Andrews testified that he had lived in the apartment for nine or ten years and that the apartment was an efficiency. When asked how he knew appellant, he stated that appellant was his cousin and he further testified that Fredrica Gomez was a friend of his. Andrews testified that the two came over every now and then.
>
> {¶ 7} Andrews testified that on November 19, 2013, Gomez and one of her male friends were over when appellant began banging on the door. Andrews testified that he told appellant that he had company and that he should come back later. Andrews called 911 because appellant was "banging kind of hard, getting upset, yelling, talking about he was supposed to come in there." Transcript, Volume I at 149. Andrews also testified that he heard the window breaking and appellant was

2

coming through. According to Andrews, appellant first went towards Gomez and hit her while cussing. He testified that appellant hit her all over. Andrews tried to break them up, but appellant then ran towards the other unnamed male in the apartment. After Andrews grabbed appellant, appellant bit him on his side. At the time, appellant was bleeding. When asked how appellant was injured, Andrews testified that he thought that appellant was injured while coming through the window. Andrews also testified that he did not give appellant permission to enter his apartment and did not let him in through the front door.

{¶ 8} On cross-examination, Andrews testified that he wanted appellant to leave because he did not want appellant in the house fighting with Fredrica Gomez. He testified that he saw appellant come through the window from the inside and that he did not let appellant into the apartment. He further testified that after appellant was in the apartment, everyone, including the unidentified male, was fighting. During redirect, Andrews testified that everything in his apartment was destroyed during the struggle, including his new TV, and that there was glass all over the floor.

{¶ 9} Canton Police Officer Joseph Barnhouse also testified. He testified that he and his partner responded to a call about an incident that took place at 802 12th Street N.W. in Canton at approximately 1:16 a.m. When they pulled up to the apartment building, the officers heard commotion and fighting going on inside. The apartment was torn up and blood was everywhere. Officer Barnhouse testified that appellant had blood on his face and was belligerent and screaming. Appellant was handcuffed and taken to the hospital. According to Officer Barnhouse, Gomez told them that appellant had busted out a window and entered the apartment through the same and then punched her. The Officer also testified that Gomez stated that appellant was her former boyfriend and that she had lived with him previously. He further testified that Andrews had a bite mark on the side of his rib cage.

{¶ 10} Appellant told the officers that he was stabbed by Gomez that night, but the only knife found was ruled out. Appellant also told them that while he was walking with a friend, his friend grabbed him and threw him through the window. Appellant later changed his story and stated that the same male had broken the window and then took off and that after the window was broken, Andrews opened the door and let him in. When asked if he was able to determine what had cut appellant, Officer Barnhouse opined that appellant had received the cuts on his face from window glass.

{¶ 11} Photographs of the injuries sustained by appellant, Gomez and Andrews were shown to the jury.

*State v. Blackford*, 2014-Ohio-4808, 2014 WL 5472437 (Ohio Ct. App. Oct. 27, 2014).

3

## II. Procedural History

**A. Conviction**

On December 23, 2013, a Stark County Grand Jury charged Petitioner with one count of aggravated burglary in violation of Ohio Revised Code ("O.R.C.") § 2911.11(A)(1), and one count of domestic violence in violation of O.R.C. § 2919.25(A).[1] (R. 8-1, PageID# 56-57, Exh. 1.)

On January 31, 2014, the State filed a "Motion for Custody of Material Witness," stating that Fredrica Gomez gave statements to the police but failed to appear before the grand jury despite being aware of its proceedings, that the State had unsuccessfully attempted to subpoena her, and that she was a material witness with crucial information. (R. 8-1, PageID# 63-64, Exh. 4)[2] The same day, the State filed a "Notice of Intent to Introduce Evidence Pursuant to Evidence Rule 804(B)(6)," arguing that Petitioner caused Ms. Gomez to be unavailable for trial by repeatedly calling her and directly telling her not to testify. (R. 8-1, PageID# 65-70, Exh. 5). The trial court granted the motion to introduce the statements of Ms. Gomez. (R. 8-2, PageID# 183-188, 210, 214-220, Trial Tr. Vol 1.)

On February 6, 2014, a jury found Petitioner guilty of aggravated burglary, but not guilty of domestic violence. (R. 8-1, PageID# 71-75, Exhs. 6 & 7). On February 13, 2014, the trial court sentenced Petitioner to a term of six years imprisonment with a mandatory five-year period of post-release control. (R. 8-1, PageID# 73-74, Exh. 7).

---

[1] A bill of particulars was filed on January 2, 2014. (R. 8-1, PageID# 59, Exh. 2.) On January 21, 2014, Petitioner, through counsel, sought to dismiss the indictment on the grounds that the prosecutor did not sign it. (R. 8-1, PageID# 61, Exh. 3.) The court denied the motion after receiving an affidavit from the prosecutor attesting to his signature. (R. 8-2, PageID# 186, 206-210, Trial Tr. Vol 1.)

[2] The exhibit is denoted as "Exhibit 8" despite being the fourth exhibit attached to the Answer/Return of Writ. (R. 8-1, PageID# 63-64).

**B. Direct Appeal**

On March 14, 2014, represented by new counsel, Blackford filed a delayed notice of appeal, which the state appellate court accepted. (R. 8-1, PageID# 76-78, 176, Exhs. 6, 9 &26). Blackford raised the following assignments of error:

1. The trial court erred in permitting the State to introduce hearsay testimony under Ohio Rule of Evidence 804(B)(6).

2. The Defendant's conviction for aggravated burglary was against the manifest weight and sufficiency of the evidence.

(R. 8-1, PageID# 79-94, Exh. 10).

On October 27, 2014, the state appellate court denied the appeal and affirmed the judgment of the trial court. (R. 8-1, PageID# 132-142, Exh. 12). Blackford did not file an appeal with the Ohio Supreme Court.

**C. Application to Reopen Appeal**

On January 29, 2015, Blackford, *pro se*, filed an application to reopen his appeal pursuant to Ohio App. R. 26(B). (R. 8-1, PageID# 143-149, Exh. 13). Blackford raised the following issues in his supporting brief:[3]

1. Ineffective counsel, Attorney failed to raise certain issues that could have greatly assisted my innocence. He failed to seek any further information that could have been helpful to my appeal.

2. Only circumstantial evidence is, I gave two statements which were not conflicting with one another. One statement was just not given in full detail due to confusion, depression, fear, fatigue at the time the statement was given.

    (A) I was accused of breaking a window and entering by force, assaulting a male and Domestic Violence. In all reality I was pushed into a window causing glass to break. Was then let in/invited into the residence by three people.

---

3 The issues below are quoted verbatim. All grammatical and spelling errors are unaltered.

5

> > (B) Two of alleged victims claims [sic] to not know third individual who was involved but, they both stated there was another individual involved.
>
> 3. Attorney failed to exercise my reasons to assist my not guilty plea.
>
> 4. Attorney failed to file motions of suppression for evidence that was not proven. There were pictures shown that was assumed to be a bite mark, that was never proven by any physician or medical exam to prove was indeed a bite mark. Also, Police Officers were able to give testimony. Beyond the compitance of the Police Officers, Attorney's failed to object and move to strike the testimony of police officers.
>
> 5. I was found NOT guilty on Domestic Violence charge due to no evidence.
>
> 6. Courts allowed prosecution to poison Jury by using false information that should have been suppressed.
>
> 7. There were also accusations of threats that kept Gomez away in which was also NOT proven. Courts failed to prove guilt on any and all accusations because victim refused to give testimony by absence in which charges should have been dismissed. The Courts did not exercise their right and power to bring the victim to testimony.
>
> 8. Both Gomez and Andrews concealed the identity of third individual which is also obstructing justice. Also, I was never given the rights to confront alleged victims in which is a violation of my rights. Prosecution used sham legal process (2921.52) Domestic Violence to justify admittance in which I was found not guilty.

(Id.)

On February 25, 2015, the state appellate court found that Blackford had failed to include proof of service on opposing counsel as required by Ohio App. R. 13(D) and ordered him to do so. (R. 8-1, PageID# 150, Exh. 14). Instead, Blackford responded by filing a certificate of service on the Stark County Clerk of Court rather than opposing counsel. (R. 8-1, PageID# 151-153, Exh. 15). On March 27, 2015, the state appellate court again ordered Blackford to provide proof of service on opposing counsel as required, rather than the clerk of court, warning Blackford that

failure to do so could result in dismissal for want of prosecution. (R. 8-1, PageID# 154, Exh. 16). On May 19, 2015, the state appellate court dismissed Blackford's 26(B) application to reopen the appeal, for failing to serve opposing counsel. (R. 8-1, PageID# 155, Exh. 17)

Blackford did not appeal the denial of his App. R. 26(B) application to the Ohio Supreme Court.

**D.    Other State Court Filings**

Meanwhile, on December 11, 2014, Blackford wrote a letter that was filed with Stark County Clerk of Court explaining that he wanted to file a motion to receive his transcripts to include with his App. R. 26(B) motion.[4] (R. 8-1, PageID# 161, Exh. 20).

On June 15, 2015, after the state appellate court denied his Rule 26(B) application for want of prosecution, Blackford filed a motion for appointment of counsel. (R. 8-1, PageID# 156, Exh. 18). The motion was denied. (R. 8-1, PageID# 160, Exh. 19).

On July 21, 2015, Blackford filed a motion for preparation of transcripts at the state's expense. (R. 8-1, PageID# 162-163, Exh. 21). On July 22, 2015, the motion was denied. (R. 8-1, PageID# 165, Exh. 22).

On November 30, 2015, Blackford filed a motion for modification in the Stark County Court of Common Pleas. (R. 8-1, PageID# 166-168, Exh. 23). He asked the court to modify his sentence from six years to three years to reflect a pre-trial plea offer. *Id*. On December 4, 2015, the

---

4  December 11, 2014 is also the last date on which a *timely* direct appeal to the Ohio Supreme Court could have been filed—45 days after the appellate court's decision. *See* Ohio S. Ct. Prac. R. 7.01 ("To perfect a jurisdictional appeal from a court of appeals to the Supreme Court as defined by S.Ct.Prac.R. 5.02(A), the appellant shall file a notice of appeal in the Supreme Court within forty-five days from the entry of the judgment being appealed.") Earlier, on November 7, 2014, Petitioner's appellate counsel had instructed Blackford to contact the clerk of court to obtain a copy of the trial transcript, as he did not possess a copy because he had returned the copy used to prepare the appellate brief to the state appellate court. (R. 1-7, PageID# 12).

motion was denied. (R. 8-1, PageID# 172, Exh. 24).

**E.    Federal Habeas Petition**

On March 18, 2016, Blackford filed a Petition for Writ of Habeas Corpus, which does not clearly set forth distinct grounds for relief. Rather Petitioner makes the following verbatim statements:

1. In that, see attached a copy of a letter from Attorney, Fredrick M. Pitinii concerning the Petitioner's court trial transcripts being obtain free of charge by his Appellate Attorney. Moreover, this Attorney assured Petitioner that he had spoken with Petitioner's Appellate Attorney about the same. Who refused to send the Petitioner the transcripts, by denying Petitioner an opportunity to appeal his case to a higher court….

2. Further, see attached letter from Attorney, Jacob T. Will. Who was the Petitioner's Appellate Attorney. Who has confess and conceded. "I quote: "The documents I received included a transcript and jury instructions. However, the transcript was not given to me; after preparing your brief the transcript was returned to the Fifth District Court of Appeals. In order to obtain a copy of the transcript and jury instructions, you must contact the Fifth District Clerk of Courts. They can be reached at 330 451 7792, or you can reach them by mail at Stark County Office Building, 110 Central Plaza South - Suite 690, Canton, Ohio 44702.   hich constitute Ineffective Assistance of Counsel….

3. Furthermore, the Petitioner sought the Appointment of Counsel from the court of appeals. However, denied! The common pleas Judge Forchione denied the Petitioner's request for the transcript from the court of appeal, when it did not have the power or authority to do so, which act have prejudice the Petitioner in the instant case. When the transcript is need….

4. Finally, the Petitioner requested the transcript from the court of appeals. But, was denied by the Court of Common Pleas, Judge, Forchione. Who lack subject matter jurisdiction to do so. When this issue was within the Jurisdiction of the court of appeals. See attached letter from Appellate Counsel, Jacob T. Will, Esq. Explaining what the Petitioner must do to obtain the court trial transcript. However, it was denied by the Court of Common Pleas, Judge, Forchione. See Judgment Entry filed July 22nd, 2015….

(R. 1, PageID #2-4).

Blackford's petition contains a section entitled "Closing Summation," which states the following:

> The Petitioner further asserts - that since his State and Federal Constitutional Rights have been violated. Therefore he should be GRANT RELEASE altogether. (1) Because, his 1st Amendment Right to redress the government on direct appeal in a timely manner was violated, according to Griffin -Vs- Illinois. (2) His 5th Amendment Right to the Due Process of the Law, according to Smith -Vs- Bounds. (3) His 6th Amendment Right to the Appointment of competent counsel, according to Evitts -Vs- Lucey. (4) His 8th Amendment right against Cruel And Unusual Punishment, according to Miranda -Vs- Arizona. (5) His 14th Amendment Right to the Equal Protection of the Law within the Court's Jurisdiction, according to Greene -Vs- Brigano. When the petitioner have been prejudice by their overt acts, Denied Comptent to the Supreme Court of Ohio, Denied a Mistrial - when a Jury Member could not find the Petitioner guilty, Denied the Trial Transcript for a timely direct Appeal, and Denied competent Counsel at Trial and on Direct appeal.

(R. 1, PageID #4-5).

### III. Exhaustion and Procedural Default

**A. Exhaustion Standard**

State prisoners must exhaust their state remedies before raising claims in federal habeas corpus proceedings. See 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent,* 17 F.3d 155, 160 (6th Cir. 1994); *see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001) ("a petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.") (citations omitted).

### B.     Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id*.   First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id*.; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[5] *Id*.

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *See, e.g., Engle v. Isaac*, 456 U.S. 107, 125-130 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. The Antiterrorism and Effective Death Penalty Act's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n.

---

[5] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39; *accord Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003), abrogated on other grounds as recognized in *English v. Berghuis*, 529 Fed. App'x 734, 744-45 (6th Cir. Jul. 10, 2013).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error."

11

*Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See, e.g., United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 617 (6th Cir. 2003).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent, in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749-50. Conclusory statements are not enough. A petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *accord Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007) (Katz, J.)

**C.     Analysis**

Respondent contends that all of Blackford's grounds for relief are procedurally defaulted due to his failure to present any of them at every level of the Ohio courts. (R. 8, PageID# 41-43). Petitioner's traverse does not meaningfully respond to Respondent's argument that the petition is defaulted.[6] (R. 10).

As stated above, the petition does not set forth distinct grounds for relief, though it alleges ineffective assistance of appellate counsel, Due Process and Equal Protection violations, a First Amendment violation, a Sixth Amendment violation for failing to appoint counsel, denial of a

---

6 The traverse requests the Court to modify his sentence to three years in prison instead of six based on a pretrial plea offer. (R. 10, PageID# 470). Blackford's regret at not accepting a plea that would have resulted in a lesser sentence does not provide a basis for habeas relief.

mistrial, denial of a transcript, and an Eighth Amendment violation against cruel and unusual punishment. (R. 1). Regardless of how the Court construes Petitioner's myriad but unexplained grounds for relief, it is clear that they were not raised on a full-round of review before the state courts. "Federal courts lack jurisdiction to consider a habeas petition claim that was not fairly presented to the state courts." *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004); *accord Fulcher v. Logan County Circuit Court*, 459 Fed. App'x 516, 522 (6th Cir. 2012) ("The very purpose of the exhaustion requirement is to 'give the state courts an opportunity to act on [a petitioner's] claims before he presents those claims to a federal court in a habeas petition' .... Accordingly, the claim was left unexhausted and is now procedurally defaulted.") In order for a federal habeas claim to have been considered "fairly presented" to a state's courts, the claim must have been raised before the state's highest court, as only in this manner will the state courts have been provided with a fair opportunity to pass upon and correct alleged violations of federal rights. *See Anderson v. Harless*, 459 U.S. 4, 6, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982); *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971); *Coleman v. Thompson*, 501 U.S. 722, 735, 111 S. Ct. 2546, 115 L. Ed. 2d 640(1991). "Fair presentation of an issue requires that a petitioner give state courts a full opportunity to resolve any constitutional issues by involving 'one complete round' of the state's appellate review system." *Caver v. Straub*, 349 F.3d 340, 346 (6th Cir. 2003) (*quoting O'Sullivan, 526 U.S. at 845*).

Before the state appellate court on direct appeal, Petitioner, through counsel, argued that the trial court erred by admitting hearsay evidence in violation of Ohio Evid. R. 804. (R. 8-1, PageID# 79-94, Exh. 10). Petitioner also argued that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. *Id*. These are the only two claims raised before the state appellate court, though neither of these claims can reasonably be construed

13

as having been raised in the present petition. Thus, any claim that can reasonably be inferred as having been raised in the habeas petition was not argued on direct appeal before the state appellate court. Petitioner also defaulted his claims by never attempting to file a discretionary appeal with the Supreme Court of Ohio. Blackford's failure to fairly present a federal ground for relief to the Ohio Supreme Court "constitutes an adequate and independent state procedural rule barring habeas review." *Hines v. Brunsman*, 2010 WL 750176 at *18 (N.D. Ohio Feb. 26, 2010) (*citing Leroy v. Marshall*, 757 F.2d 94, 99 (6th Cir. 1985); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004)). Moreover, even had Petitioner filed an appeal with the Supreme Court of Ohio, Petitioner would have been limited to raising the same arguments presented on appeal below, as under Ohio law, a constitutional question cannot ordinarily be raised before the Ohio Supreme Court unless it was first presented to the intermediate appellate court. *See State v. Jester*, 32 Ohio St.3d 147, 154, 512 N.E.2d 962, 966 (1987).

Blackford, however, did file an application to reopen his appeal pursuant to Ohio App. 26(B), which had the potential to preserve some of his claims through the lens of an ineffective assistance of appellate counsel claim.[7] (R. 8-1, PageID# 143-149, Exh. 13). Nevertheless, the state appellate court did not consider the merits of the claims raised in the application to reopen, because the application was dismissed for want of prosecution when Blackford failed to serve opposing counsel despite being instructed to do so twice. (R. 8-1, PageID# 150-155, Exhs. 14-17). Blackford did not appeal the dismissal of his 26(B) application and could no longer do so now. Pursuant to Ohio S. Ct. Prac. R 7.01(A)(4)(C), "[t]he Clerk shall refuse to file motions for delayed

---

7 Though an Ohio App. R. 26(B) application ostensibly "reopens" an appeal, it remains, nonetheless, "a collateral post-conviction procedure, and is not part of the direct right of appeal." *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*en banc*); *accord Williams v. Lazaroff*, 648 Fed. App'x 548 at n. 1 (6th Cir. May 12, 2016).

14

appeal involving postconviction relief or App.R. 26(B)." Any attempt by Blackford to file a delayed appeal from his 26(B) application would not satisfy the requirement that an issue be presented to a state's highest court. *See, e.g., Dickerson v. Warden, Ross Corr. Inst.*, 2016 WL 1642963 at *9 (S.D. Ohio, Apr. 26, 2016) (finding the petitioner procedurally defaulted his claim of ineffective assistance of appellate counsel, because he failed to appeal the denial of his application to reopen pursuant to Ohio Appellate Rule 26(B) and could no longer do so under Ohio S.Ct.Prac.R. 7.01(A)(4)(c)); *Crawford v. Lazaroff*, 2016 WL 791608 at *9 (N.D. Ohio, Jan. 14, 2016) ("because the Supreme Court of Ohio does not permit delayed appeals for post-conviction petitions, Crawford would be procedurally barred from bringing these claims in state court [and is] procedurally barred from pursuing these claims in federal court."); *Robbins v. Warden, Chillicothe Corr. Inst.*, 2016 WL 1039568, at n. 5 (S.D. Ohio Mar. 7, 2016), *report and recommendation adopted*, 2016 WL 1572963 (S.D. Ohio, Apr. 19, 2016) (same). Therefore, to the extent the petition seeks to raise claims of ineffective assistance of appellate counsel, those claims are also defaulted.[8]

The Court, however, can consider Blackford's procedurally defaulted claims if he can demonstrate cause and prejudice for the default. The petition repeatedly takes issue with counsel failing to furnish him with a copy of the trial transcript, the state courts' denial of his post-direct appeal request for a copy of the transcript, and the state courts' denial of his motion to appoint counsel after his App. R. 26(B) application to reopen was denied. (R. 1).

The Court will consider these arguments as "cause" for Petitioner's default. However, the

---

[8] Alternatively, the state appellate court's dismissal for want of prosecution also renders Blackford's claims defaulted. "Dismissals for failure to comply with a court order and for want of prosecution involve a 'firmly established and regularly followed' practice utilized by all courts, not only the courts of Ohio." *James v. Warden, Lebanon Corr. Inst.,* 2007 WL 2326867, at *4 (S.D. Ohio, Aug. 10, 2007).

Court declines to find that any of these events constitute sufficient cause to excuse Petitioner's default. As stated above, in order to demonstrate "cause," a petitioner must show that an objective factor external to the defense impeded his efforts to comply with state procedural rules *See Franklin*, 434 F.3d at 417 (*citing Murray*, 477 U.S. at 488)). Blackford's unsuccessful attempts to obtain the transcript do not explain why he failed to file a timely discretionary appeal, or even a delayed appeal with the Supreme Court of Ohio. Petitioner did not send a letter to the Stark County Clerk of Court indicating that he wished to receive a copy of his transcript until December 11, 2014—the last date on which a timely notice of appeal to the Ohio Supreme Court could have been filed. Moreover, a closer reading of Petitioner's December 11, 2014 letter to the Stark County Clerk of Court states that he wanted the transcript because he was "trying to file a B-26." (R. 8-1, PageID# 161, Exh. 20). Blackford was clearly attempting to reference an App. R. 26(B) application to reopen his appeal. As such, he plainly was not attempting to obtain a copy of the transcript to aid in the furtherance of a discretionary appeal from the denial of his direct appeal. Thus, the state court's ultimate denial of Blackford's request for an additional transcript cannot reasonably be characterized as the "cause" of Petitioner's failure to complete a full-round of direct review.[9]

Turning to Petitioner's application to reopen his appeal under App. R. 26(B), that application was denied for want of prosecution on May 19, 2015, after Blackford failed to comply with two separate and explicit orders instructing him to serve opposing counsel. (R. 8-1, PageID# 150-155,

---

9 In his petition, Blackford seems to suggest that counsel's refusal to send Petitioner a copy of the transcript denied him "an opportunity to appeal his case to a higher court. Because, without it it [sic] would be no avail." (R. 1, PageID# 1-2). There is simply no indication that Ohio S.Ct.Prac.R. 7.01, which addresses the institution of jurisdictional appeals, requires a trial transcript to accompany the Notice of Appeal. In fact, Ohio S.Ct.Prac.R. 15.03 states that "[u]pon order of the Supreme Court, the clerk of the court appeals … shall certify and transmit the record to the Clerk of the Supreme Court…."

Exhs. 14-17). Blackford did not file a formal motion for a copy of the trial transcript until July 21, 2015—two months after his application to reopen was dismissed. (R. 8-1, PageID# 162, Exh. 21). Even if the earlier December 11, 2014 letter expressing an interest in obtaining a copy of the trial transcript could be construed as a motion that the state appellate court failed to act on before dismissing Blackford's 26(B) application, the denial of the application to reopen was unrelated to the transcript issue. In other words, the application was not denied because Blackford did not submit a copy of the trial transcript. Furthermore, Blackford cannot argue that a lack of access to the transcript frustrated his ability to present his ineffective assistance of appellate counsel claims, because the dismissal also was not based on the merits of the issues presented. Thus, the lack of a transcript cannot be construed as the "cause" of the dismissal, as it had no impact on Blackford's repeated failure to serve opposing counsel.

Blackford's other complaint—that his motion for appointment of counsel to aid with his App. R. 26(B) application to reopen was denied— also fails to constitute cause sufficient to excuse his default. First, "the Sixth Circuit has treated motions to reopen appeals under Ohio R.App. P. 26(B) as post-conviction proceedings, for which no right to counsel is constitutionally required." *Whatley v. Smith*, 2009 WL 4282926, at *7 (N.D. Ohio, Nov. 30, 2009) (Lioi, J.); *see also Rideau v. Russell*, 342 Fed. App'x 998, 1003 (6th Cir. 2009) ("Rule 26(B) is a collateral proceeding to which no right to assistance of counsel attaches."); *accord McClain v. Kelly*, 631 Fed. App'x 422, 430 (6th Cir. 2015), *cert. denied*, 2016 WL 1450269 (U.S. Oct. 3, 2016); *cf. Abdur 'Rahman v. Carpenter*, 805 F.3d 710, 713 (6th Cir. 2015) ("*Martinez* does not apply to excuse the default of a claim of ineffective assistance of appellate counsel"); *Bryan v. Bobby*, 114 F. Supp. 3d 467, 535 (N.D. Ohio 2015) (Carr. J.) (rejecting petitioner's argument that post-conviction counsel's failure to timely file 26(B) Application served as cause to excuse the default of his ineffective assistance

17

of appellate counsel claim). Second, Blackford's belatedly filed motion for appointment of counsel cannot reasonably serve as cause for the dismissal as it was filed almost a month after the App. R. 26(B) application was dismissed.

For the above stated reasons, the Court finds Blackford has failed to establish cause for his default. Because Petitioner has not established cause, the issue of prejudice is moot. Further, neither the petition nor the traverse draws the Court's attention to any new, reliable evidence (*i.e.* exculpatory scientific evidence or trustworthy eyewitness accounts) that would satisfy the *Schlup* standard. As such, the Court cannot consider Blackford's defaulted claims based on a theory of actual innocence, and Blackford's claims remain defaulted.

Finally, to the extent Blackford seeks to raise a free-standing claim that he is entitled to habeas relief because the state courts failed to provide a second transcript, such a theory is unavailing. Petitioner relies on the Sixth Circuit's decision in *Greene v. Brigano*, 123 F.3d 917 (6th Cir. 1997), wherein the Court held that:

> Considering that the Ohio Appellate Rules require citation to the record in support of each assignment of error, access to that record is a necessity. *See Britt*, 404 U.S. at 228, 92 S.Ct. at 433 ("Our cases have consistently recognized the value to a defendant of a transcript of prior proceedings, without requiring a showing of need tailored to the facts of the particular case."). Accordingly, the State was required to provide Greene either a copy of that transcript or an alternative that fulfilled the same functions. *See Britt*, 404 U.S. at 227, 92 S.Ct. at 433; *Riggins*, 74 F.3d at 735 ("Several other circuits also have interpreted Britt as generally requiring a transcript unless the state shows that its alternative procedure was substantially equivalent.") (*citing United States v. Devlin*, 13 F.3d 1361, 1363-64 (9th Cir. 1994); *United States v. Jonas*, 540 F.2d 566, 573 (7th Cir. 1976); *United States v. Baker*, 523 F.2d 741, 742-43 (5th Cir.1975)).

*Greene*, 123 F.3d at 920-921.

Petitioner ignores material factual differences between Greene and his situation. In Greene, the petitioner was denied a copy of the transcript on direct appeal, and the petitioner was

proceeding *pro se* before the state appellate court after dismissing his attorney. Conversely, Blackford was not proceeding *pro se* on direct appeal, and it is undisputed that Blackford's appellate counsel had a copy of the transcript when preparing the appellate brief on Blackford's behalf. In addition, it is clear from the record that Blackford sought a copy of the transcript to aid in his preparation of a collateral filing and not for direct review. In *Brown v. Voorhies*, No. 2:07-CV-00014, 2009 WL 187830, at *19 (S.D. Ohio Jan. 26, 2009), a habeas court observed that "[i]n this case, petitioner was represented on appeal by counsel who had access to the trial record and transcripts. Under these circumstances, the appellate court's refusal to provide duplicate transcripts at state expense was not constitutionally impermissible." *Id*., *citing Lee v. Wilson*, 2007 WL 2571954 (N.D. Ohio August 31, 2007) *amended on other grounds*, 2007 WL 2815204 (N.D. Ohio September 25, 2007) (stating that appellate counsel had no duty to turn over the transcript to the defendant during preparation of the appeal) (Baughman, M.J.); *see also Hooks v. Roberts*, 480 F.2d 1196, 1198 (5th Cir. 1973) ("If a defendant is represented by counsel on appeal who has a copy of the trial transcript, there is no constitutional requirement that the defendant also be provided with physical custody of a copy of the transcript."), *cert denied*, 414 U.S. 1163, 94 S. Ct. 926, 39 L. Ed. 2d 116 (1974); *accord United States v. Ilodi*, 982 F. Supp. 1046, 1048 (D. Md. 1997). Similarly, the United States Supreme Court has found that a federal defendant who chose to forgo a direct appeal with its attendant unconditional free transcript is not entitled to a free duplicate transcript in pursuit of habeas relief under § 2255. *See United States v. MacCollom*, 426 U.S. 317, 325, 96 S. Ct. 2086, 2091–92, 48 L. Ed. 2d 666 (1976) ("Respondent chose to forgo his opportunity for direct appeal with its attendant unconditional free transcript. This choice affects his later equal protection claim as well as his due process claim. Equal protection does not require the Government to furnish to the indigent a delayed duplicate of a right of appeal with attendant

19

free transcript….") (plurality opinion); *Payne v. Jennings*, 194 F.3d 1313 (6th Cir. 1999) ("no constitutional right to a transcript to prepare for a post-conviction proceeding").

Therefore, Petitioner's request for a conditional writ based on the state appellate court's refusal to send Blackford a duplicate copy of the transcript does not state a basis for habeas relief.

### IV. Conclusion

For the foregoing reasons, it is recommended that Blackford's Petition be DENIED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: August 11, 2017

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.** 28 U.S.C. § 636(b)(1)**. Failure to file objections within the specified time may waive the right to appeal the district court's order.** *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981)**;** *Thomas v. Arn*, 474 U.S. 140 (1985)**,** *reh'g denied*, 474 U.S. 1111 (1986)**.**